v. Titeflex Corporation Morning, Your Honors, and may it please the Court, my name is Kevin Peters and I represent the appellant Timothy Karin. This is an Article III standing case that derives from a defective product, so alleged, that transports natural gas in many houses throughout the Commonwealth of Massachusetts. The product is a flexible gas pipe that when exposed to lightning either directly or when lightning hits the ground near it, is subject to perforation and then the contents, the gas, is subject to explosion. Do you say it's an Article III standing case? Are you conceding that? No, I'm not. Do you think that's a problem? I know that's the way the District Court characterized the case, but do you think that's correct? No, I mean, I think we, I think once we have a cause of action in this case and we do under state court action, we meet Article III standing. I think that we have alleged and we can prove eventually that the product is dangerously defective, but under Article III, if the Court considers as if I think the Court should and must. Does it have to have a state cause of action in order to have Article III standing or is it a colorable claim under state law? I think I have to make out a prima facie case. I think I have to allege a plausible cause of action under either Twombly or Iannaccino, the state and federal standards. The question really is plausibility and so when we look at the pleadings in which this Court does de novo to determine whether or not the Court was right that we haven't alleged sufficient facts to meet Article III standing, I think the question isn't colorable. I think the question is plausibility. Whatever label one puts on it, the most you're asserting is a risk of injury and the district court in a sort of shorthand say, well, you know, the risk of lightning striking is rare. May not be the right way of looking at it, but you transform the notion of risk of future injury to an assertion that because of that risk, we overpaid for the product and therefore I have injury now. It's an interesting assertion. Most states don't look favorably on that. But on the question of the risk of future injury, isn't this an instance where the state is significantly insubstantial because they continue to allow the sale of the product despite the degree of risk? And why should we be substituting our judgment for that of the expert agencies that have actually looked at the science of all of this? The question becomes, let me answer your question directly. I'm not asking you to substitute your judgment. What I'm suggesting is that the state regulators in their efforts to determine whether this product is safe or not, which obviously is done diligently and in good faith, may not have it right. And that's what we allege. We allege that this product is dangerously defective and exposed to conditions that haven't been tested by Typeflex. Normally, if the state regulators don't have it right, you go to state court and you assert that it's arbitrary and so on and so forth. Here, the state regulators actually looked at this risk, what they suspended regulations for four months and then they came back and they said, no, the product is safe to sell. You didn't challenge that or nobody has. Those regulations have been around for a while. So I don't see how there is any present injury out of the sale of an approved product. Well even if a product is approved and cigarettes come to mind, just because they do in this instance, doesn't necessarily mean that the product isn't dangerously defective. It can be proven so. In other words, the state regulators don't act as the jury in this context. Yes, but in those cases, Massachusetts at least has required some evidence of physiologic change, some sign of actual injury, not just the fear of risk of injury. Right. So in the Donovan case, for example, the court said there needs to be some cellular harm. And in this context, what we say is, number one, we have an existing risk, or we should say existing damages and a substantial risk of future harm. Let's conflate them for a minute because I think that's where we're going unless I'm missing the court's point. In this context, what we say is this product has been not only in Massachusetts, but obviously across the country. And there is an extent risk, there's a risk of explosion that has occurred, yes, 141 times, and that's not enough. But the question really becomes if this product should be manufactured in order to withstand a foreseeable circumstance, which is a lightning strike. So if we compare it to Donovan, which is a medical monitoring case, and we say whether there is a present harm, the present harm in this context is must there be, or is it reasonable, I think to the standard, to remediate existing condition to preclude the possibility of a catastrophic injury? I'm having a little bit of difficulty understanding precisely what damage you say your client, I'm looking at your complaint right now, suffers or will suffer. I put it in the present and future tense. Do you allege any present injury, and if so, what? Present injury is that Mr. Karan bought a product that should be lightning safe, I don't know if anything is lightning proof, but lightning safe, and we allege that this product is not lightning safe, and therefore one of two things are present. Economic injury, which begs additional questions, but I'll just answer your question, Judge. First economic injury is that he overpaid, because when you buy a product, you should get something that's... No, it's an economic injury. And the second economic injury is he should be in a position, and he can allege, for the cost of remediation, which is one of two things in the record, either replacement with iron pipe, which has been the standard for years. You're talking about a non-economic injury? A non-economic injury is the substantial risk, which I think gets us into the Article 3 question, the substantial risk of a future injury, which I think is where Judge Ponser said it's too remote, it's too speculative, because lightning is too speculative. So that's a separate question, which I'd be glad to go into. You know, the Supreme Court, with its Clapper decision, has revivified the whole area of probabilistic risk, and seems to have returned to, or reemphasized earlier, Article 3 standing requirements, that it can't be speculative, can't be too remote, which starts raising questions about how you go about measuring probabilistic risk. The district court here said, oh, you know, lightning strikes irregularly, whatever. But I'd like to go back to my theme of the people who actually looked at this, did some measurements, and they decided that the risk was too remote to stop them from allowing the sale of this product. The product does many good things. And so if we're in this, how do you measure probabilistic risk? Isn't this something that counts against you? I think that there's, in fairness to the process, a lot of steps between me and a jury. I concede that point. The first step, however, Article 3 standing, I think we may have. Yeah, but you see, the Supreme Court has tightened up on that. Well, the Supreme Court, in June of this year, in the Susan B. Anthony List case, went back, and although I can't say it's an exhaustive exploration of Clapper, said that if there's a substantial risk that harm will occur, that substantial risk is sufficient to give rise to Article 3 standing. We have an agency that says that essentially there is no substantial risk. We're going to allow the sale of the product. But agencies approve the use of products all the time, and if the products are defective, notwithstanding the agency approval, the cause of action exists. No, but it does go to the... Probabilistic. Yes, right. It does, but if we take a look at what's been, and I see my... No, go ahead. I'll answer your question. No, go ahead. If we go to see what's happened throughout the country, and we see that this risk exists, the question becomes whether or not, as a matter of summary judgment under Rule 56, we'll ever survive. And as I say, I think... Well, no, the matter's been phrased as whether you've suffered enough injury to warrant being in a federal court. Right, and I would rely on, obviously, the jurisprudence of the Supreme Court and this Court. I'd point out that the Bauer Court from the Second Circuit, the Bauer case that you may have read, which has to do with mad cow disease and downed cattle, the risk of mad cow disease was much more remote. Yes, that's true, but that's a... their food liability probabilistic risk law is actually its own category of law. Except that the Second Circuit has used that very standard to find Article III standing in three more recent cases, which I can give you the cites to. That are not food or gun liability cases. That's correct. Could you give us those cases in a 28-J letter? I will. I haven't so far in your argument mentioned the Johnson insulation case. Why? I mean, I'm very surprised that you didn't come up here and hit me over the head with it. Well, I was... perhaps I should have. So the Johnson insulation case has to do with asbestos. The question at that point in time is whether or not there's an existing harm, even though you don't have anyone who is coming forward and saying, I have asbestosis. And the court, the SJC in the Johnson case, as you know, said, yes, they're standing to bring a case here because the cost of remediation, it's not quite clear how they find property damage, but they do find property damage. So are cases like Johnson in the sense that if you have a product that's dangerously defective and it's installed in a home, that in and of itself is sufficient to give rise or may be sufficient to give rise to a cause of action. Standing in state court, in other words, getting past 12B-6, motion to dismiss. And I haven't dealt with the issue, nor will I raise a subject to the court, the issue of economic loss, which is a big issue in this case. I see I'm out of time and I'd rely on my briefs on that. Unless there are more questions. No, thank you. Thank you, Your Honor. Good afternoon, Your Honors. May it please the court. John Papiano for the defendant Applee Titeflex Corporation. Your Honors, Judge Ponser properly dismissed this complaint because the plaintiff lacks standing. He lacks standing because he purchased a product that works. He suffered no harm and he faces no imminent risk of harm or even a substantial risk that harm will follow. He has a product, as the court recognizes, that Massachusetts permits and has permitted for 20 years. That Florida, where he resides, permits the installation and use where every state... You know, I draw a distinction. The mere permitting of a product means one thing if they haven't looked at the risk. It means something else if they have looked at the risk. And as I understand it, Massachusetts did look at the risk. Did Florida look at the risk? I don't know if Florida looked at the risk the way Massachusetts did. Massachusetts certainly did. But I think what's important to note when we're looking at this product and the efficacy or safety of the product, this is not a product, remember, that came out last week or last year. This is a product that's been on the market for 20 years and that's an over, as the plaintiff alleges, over half the homes in the United States. There's an empirical data we have about whether there is a substantial likelihood or whether harm is certainly impending. And their own allegations show just how remote and unlikely that is. They talk about 141 reports of fires involving lightning in CSST. But even that, which is less than three thousandths of one percent, overstates their case because that includes all manufacturers of the product. It doesn't account for whether the product was properly installed, which is one of the critical facts. And it doesn't account for whether the product caused the fire. And, you know, so when we're looking at is there a substantial likelihood that harm will follow? And the answer, as the plaintiffs make for us, is no, it's not going to happen. And if there were a reasonable or high, even taking the clapper dissent, reasonable probability that harm will follow, you know, I would submit I would not be up here right now because we would see over 20 years the harm that supposedly follows from the use of this product. What is the, in your view then, the element missing so that there's not a cause of action under Massachusetts law? I'm struggling with, I don't, I'm not an expert in Massachusetts law. What's missing? Under Massachusetts law, the Supreme Judicial Court said, if you have a product that hasn't malfunctioned and you just say it's defective and I've suffered an economic loss, and what you're seeing is purely economic loss, that you have to allege that the product fails to meet a standard that's legally required by and enforced by the government. And the plaintiffs haven't done here. And, in fact, Massachusetts permits the installation use of the product. And some jurisdictions, especially in the Eighth Circuit, require the manifestation of a defect just categorically. Massachusetts doesn't go that far, but they say, look, if you're just, if you have a malfunction, you need to show us a standard against which this could be measured. And it needs to be a standard legally required by and enforced by the government. And that's why they don't have a claim under Massachusetts law. Why, how do you distinguish the Johnson insulation case? Well, Johnson insulation, if I'm correct, comes before Ioncino. But more important, that's a, that's a, that's what it amounts to in a monitoring type case, an asbestos case, where you, there's, there's a recognition that if you inhale asbestos, that it sort of mixes with your body and that's not a good thing. And maybe you'll get mesothelioma, maybe you won't. But in that case, you know, you can get monitoring. I mean, we see it with the football cases and the concussion cases. Maybe you'll get some type of, you know, head issue later on in life, but you can get monitoring. The plaintiffs here aren't seeking monitoring. They're seeking money damages, but they haven't plausibly alleged a harm or an injury in fact. That's the, that's the distinction. That's the problem and why they don't have standing. Let me just see whether Judge Ripple has any follow-up questions. Thank you. Thank you. Thank you.